IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MISHAWN CHILDERS, | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| vs. | § | Civil Action 3:22-cv-2615 |
| | § | |
| LIFESTYLES UNLIMITED, INC., | § | **JURY DEMANDED** |
| LIFESTYLES REALTY, INC., | § | |
| LIFESTYLES REALTY DALLAS, INC. | § | |
| | § | |
| *Defendants*. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND

TO THE HONORABLE COURT:

Plaintiff Mishawn Childers presents her Complaint for unlawful discrimination in violation of 42 U.S.C. § 1981.

### PARTIES

1. Mishawn Childers is a citizen and resident of the United States, residing in Tarrant County, Texas.

2. Lifestyles Unlimited, Inc. is a domestic corporation and may be served with process by serving its registered agent, Delbert E. Walmsley, Jr., at its registered address, 11200 Westheimer Rd., Suite 1000, Houston, Texas 77042.

3. Lifestyles Realty, Inc. is a domestic corporation and may be served with process by serving its registered agent, Delbert E. Walmsley, Jr., at its registered address, 11200 Westheimer Rd., Suite 1000, Houston, Texas 77042.

4. Lifestyles Realty Dallas, Inc. is a domestic corporation and may be served with process by serving its registered agent, Delbert E. Walmsley, Jr., at its registered address, 11200 Westheimer Rd., Suite 1000, Houston, Texas 77042.

## JURISDICTION AND VENUE

5. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1343(a)(4) and 28 U.S.C. § 1331.

6. This is a suit authorized and instituted pursuant to the Civil Rights Act of 1866, 42 U.S.C. § 1981; and declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

7. Venue of this Court is pursuant to 28 U.S.C. § 1391(b), the judicial district in which a substantial part of the events giving rise to this claim occurred.

## BACKGROUND

**Foreseeability of the Problem**

8. Discrimination and retaliation are foreseeable because businesses know that discrimination and retaliation are prevalent in the United States.

9. A Glassdoor survey reports that 61 percent, or about three in five U.S. employees have witnessed or experienced discrimination in the workplace.[1]

10. The same survey reports that 42 percent of employed adults in the U.S. have experienced or witnessed racism in the workplace; the highest percentage of the four countries surveyed.[2]

---

[1] https://about-content.glassdoor.com//app/uploads/sites/2/2019/10/Glassdoor-Diversity-Survey-Supplement-1.pdf (Last visited April 14, 2021).
[2] *Id.*

11. A report noted by the EEOC states that 75 percent of employees who spoke out against workplace mistreatment faced some form of retaliation.[3]

12. A report by Ethics & Compliance Initiative finds that when employees at all levels are held accountable, retaliation is not as prominent; however, the retaliation rate is only 16 percent when managers are held accountable compared to approximately 40 percent when managers are not held accountable.[4]

## The Purpose of the Law

13. Foreseeability is important because the law is meant to be preventative.

14. The federal anti-discrimination laws primary objectives are prophylactic, chiefly aimed not to provide redress but to avoid harm.

15. Corporations may be liable for punitive damages who do not make good-faith efforts to prevent discrimination in the workplace to accomplish the objective of motivating employers to detect and deter discrimination violations.

16. The right to expect that corporations hire human resources (HR) representatives qualified to follow discrimination and retaliation laws is essential to our community.

17. The right to expect that corporations will adequately train managers to follow discrimination and retaliation law is essential to our community.

18. The right to expect that corporations will supervise managers to follow discrimination and retaliation law is essential to our community.

---

[3] https://www.eeoc.gov/select-task-force-study-harassment-workplace#_ftn65 (Citing Lilia M. Cortina & Vicki J. Magley, *Raising Voice, Risking Retaliation: Events Following Interpersonal Mistreatment in the Workplace*, 8:4 J. Occupational Health Psychol. 247, 255 (2003)).
[4] https://www.ethics.org/knowledge-center/increasing-employee-reporting-free-from-retaliation/ (Last visited April 14, 2021).

19. The right to expect that corporations will prevent any form of discrimination or retaliate against persons who report discrimination is essential to our community.

20. The right to expect that corporations must care about workplace laws to protect us from damages is essential to our community.

**Lifestyle Does Business in Texas**

21. Defendants Lifestyles Unlimited, Inc., Lifestyles Realty, Inc. and Lifestyle Realty Dallas, Inc., collectively "Lifestyles," is a real estate brokerage group representing real estate investors with over 40,000 customers, with locations in Georgia, Kansas, Missouri, Arizona, Tennessee, and Texas.

22. Lifestyles knows that discrimination and retaliation are foreseeable as potential problems in its work and business place.

**Lifestyles' Serious System Failure**

23. Lifestyles hires Human Resource personnel who are not qualified to follow policies prohibiting discrimination and retaliation laws.

24. Lifestyles fails to adequately train its managers to follow policies prohibiting discrimination and retaliation laws.

25. Lifestyles fails to supervise its managers to ensure they follow policies prohibiting discrimination and retaliation laws.

**Consequences of Failure to Enforce**

26. Because Lifestyles fails to hire qualified HR personnel and adequately train and supervise managers, the corporation discriminates and retaliates against by first disciplining the

employee or agent because of race and then terminating the employee or agent after the employee reported concerns of violations.

27. Lifestyles had a contractual relationship with Ms. Childers that included either a de facto employment or independent contractual relationship.

28. Lifestyles discriminated against and terminated its relationship with Ms. Childers for opposing discrimination in its contractual relationships, although she was recognized as a high performer and one of the most sales agents at the company.

29. If Lifestyles had evaluated Ms. Childers equally with her peers, she would not have been terminated.

30. But for ignoring how Ms. Childers compared with her peers, she would still be employed at and contributing to the success of Lifestyles.

31. Although foreseeable, Lifestyles failed to prevent discrimination against Ms. Childers.

32. Although foreseeable, Lifestyles failed to prevent retaliation against Ms. Childers when she reported discrimination.

33. Lifestyles failed to conduct a fair investigation of Ms. Childers' complaints.

34. Lifestyles chose not to talk to all important witnesses in its investigation of her complaints.

35. Lifestyles chose not to look at all important documents in its investigation of her complaints.

36. Lifestyles chose not to evaluate Ms. Childers with her peers in its investigation of her complaints.

37. Lifestyles chose not to adequately train mangers on the signs to recognize discrimination.

38. Lifestyles chose not to adequately train mangers on the signs to recognize retaliation.

39. Lifestyles failed to monitor the workplace for signs of discrimination because managers and employees did not know how to recognize and prevent discrimination.

40. Lifestyles failed to monitor the workplace for signs of retaliation because managers, employees, and agents did not know how to recognize and prevent retaliation.

41. Lifestyles mangers recognize discrimination if someone makes racist comments, but managers are not adequately trained to look for signs of discrimination absent racial comments.

42. Lifestyles chose not to adequately train managers that employees or agents who discriminate are not going to admit to discriminating against employees or agents.

43. Lifestyles chose not to adequately train managers that retaliators are not going to admit to retaliating against employees.

44. Lifestyles chose not to adequately train managers that people are afraid to report discrimination and retaliation because the discrimination and retaliation will only get worse.

**Discriminatory and Retaliatory Treatment of Ms. Childers**

45. Lifestyles treated Ms. Childers differently from persons who are not African American.

46. Ms. Childers, a residential sales manager at the company and a previous top sales agent, requested to be a commercial or multifamily sales agent, as well.

47. Ms. Childers' license and qualification allowed her to perform as a commercial or multifamily sales agent.

48. Lifestyles informed Ms. Childers that she must choose between being a sales manager and a commercial sales agent, and if she chose to be a commercial sales agent, Lifestyles would not train or assist her in the position.

49. Lifestyles did train and assist other commercial sales agents who were not African American.

50. Rather than make this difficult choice, Ms. Childers chose to apply for the position of a Mentor at Lifestyles.

51. Mentors at Lifestyles advised and assisted real estate investors in the real estate market.

52. Ms. Childers inquired about being accepted into the position.

53. Lifestyles stated that Ms. Childers did not personally own enough properties to become a Mentor.

54. Lifestyles did not have express policies for the amount of properties needed to become a Mentor.

55. Ms. Childers had more properties than other Mentors who were not African American.

56. Lifestyles then began to create a hostile work environment for Ms. Childers.

57. Ms. Childers then complained of race discrimination to Lifestyles.

58. Lifestyles terminated Ms. Childers the next day

59. In its email to Ms. Childers terminating its contractual relationship with Lifestyles, it stated the Ms. Childers' discrimination complaint was "offensive and insulting" and Lifestyles was "not the right fit" for Ms. Childers.

**History of Discrimination and Retaliation**

60. Ms. Childers is not the only person to have complained of discrimination or retaliation at Lifestyles.

61. Many other persons have complained of discrimination and retaliation at Lifestyles.

62. Lifestyles does not adequately keep records of prior discrimination or retaliation complaints.

63. In continuing rather than eliminating retaliation, Ms. Childers became the person being investigated rather than the manager being complained about.

64. Lifestyles managers ignored the signs of discrimination and retaliation and did not respond to prevent the discrimination and retaliation.

65. Lifestyles ignored Ms. Childers' excellent history of performance at Lifestyles.

66. Ms. Childers was a rising star at Lifestyles until she reached the commercial sealing in the Dallas office.

**Policies Do Not Enforce Themselves**

67. Lifestyles has written polices created for the purpose of following laws against discrimination and retaliation.

68. Lifestyles knows that the written polices do not enforce themselves.

69. Lifestyles' policies promised to protect Ms. Childers from discrimination and retaliation.

70. Lifestyles violated its own policies by discriminating and retaliating against Ms. Childers.

71. Lifestyles breached its promise to protect Ms. Childers from discrimination and retaliation.

72. Lifestyles refused to examine records of Ms. Childers' evaluations as compared to other persons similarly situated to her.

73. Lifestyles refused to compare Ms. Childers' good performance with other persons similarly situated to her who were not African American.

**Lifestyles Discriminated Because Of Race**

74. Corporations must not discriminate against persons because of race.

75. Lifestyles did not evaluate Ms. Childers as the same as her peers when it refused to promote her and terminated her employment or contractual relationship.

76. Ms. Childers was performing as good or better than her peers.

77. The difference is she is African American.

## CAUSES OF ACTION

**Violation of the Civil Rights Act of 1866**

78. Ms. Childers' claim for recovery under the Civil Rights Act of 1866 is based upon 42 U.S.C. § 1981, which provides that all persons within the United States shall have the same right to make and enforce contracts and to the full and equal benefit of all laws as is enjoyed by white citizens.

79. This law entitles a person of color to equal opportunity and treatment in employment or other contractual relationships.

80. When an employer or contractor acts adversely against a person of color because of that person's race, the law has been violated and the person of color may file suit and recover damages.

81. A person is also entitled to file suit and recover damages under the Civil Rights Act of 1866 for retaliation for opposing or reporting violations of the Civil Rights Act of 1866, or for participating in an investigation of a violation of the Civil Rights Act of 1866.

82. Ms. Childers belongs to a protected group and was subjected to unwelcome harassment based on her race, including a hostile work environment.

83. Lifestyles knew or should have known of the harassment but took no prompt remedial action.

84. Ms. Childers was subjected to ridicule or insult or other improper conduct based on Ms. Childers' race.

85. The harassment was obnoxious and shocking to the conscience of the ordinary person.

86. The harassment was severe and pervasive, interfering with the terms and conditions of her employment or contractual relationship with Lifestyles.

87. The harassment and termination were sufficiently severe or pervasive to alter the conditions of Ms. Childers' contractual relationship with Lifestyles.

88. The harassment was objectively and subjectively offensive.

89. The disparaging racial treatment or other improper conduct was unwelcomed and undesirable or offensive to Ms. Childers.

90. The harassment of Ms. Childers altered a term, condition, or privilege of her contractual relationship with Lifestyles.

91. A reasonable person would find that the harassment created and was abusive working environment.

92. Employees or agents of Lifestyles participated in the harassment of Ms. Childers.

93. Lifestyles knew or should have known of the harassment and failed to take prompt, remedial action to eliminate the harassment.

94. Lifestyles has a pattern and practice of discriminating based on race and retaliating against those who oppose or report discrimination.

95. Ms. Childers opposed Lifestyles denying persons the "right to make" contracts and denying the same "security of persons and property as is enjoyed by white citizens" in the United States as required by federal law. *See* 42 U.S.C. § 1981.

96. Lifestyles treated Ms. Childers adversely after she opposed and reported unlawful discrimination.

97. Lifestyles engaged in material adverse actions against Ms. Childers, that might well dissuade a reasonable person from opposing or reporting the discrimination had they known they would face the adverse actions.

98. The harassment of Ms. Childers from Lifestyles materially altered her contractual relationship, as wellc.

99. The termination of the contractual relationship was not only discriminatory, it was retaliatory.

100. Lifestyles violated the federal statute by intentionally discriminating and retaliating against Ms. Childers; and, as a direct result of the discrimination and retaliation caused damages to Ms. Childers.

101. The liability can be either actual or constructive under the *McDonnell Douglas* framework.

102. Lifestyles knew or should have known that its White employees were discriminating against African Americans and taken corrective action to prevent the discrimination within its control.

103. Prevention is the best tool for the elimination of harassment.

104. Lifestyles did not take the steps necessary to prevent the harassment from occurring, such as affirmatively raising the subject, expressing strong disapproval, developing appropriate sanctions, informing employees or agents of their right to raise and how to raise the issue of harassment, and developing methods to sensitize all concerned.

**Compensatory and Equitable Relief**

105. Ms. Childers sustained damages, including lost wages and benefits, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses for which she is entitled to recovery under her causes of action.

106. Ms. Childers is also entitled to declaratory relief that a violation has occurred.

107. Ms. Childers is also entitled to equitable relief in the form of reinstatement and an injunction against future discrimination or retaliation.

**Attorneys' Fees**

108.    Ms. Childers is also entitled to attorneys' fees, interest, and costs of court for services rendered in this cause, including trials and appeals.

**Exemplary Damages**

109.    Ms. Childers is also entitled to receive punitive damages because Lifestyles engaged in a discriminatory or retaliatory practice or in discriminatory or retaliatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual.

### JURY DEMAND

110.    Ms. Childers request a trial by jury to the extent allowed by law.

WHEREFORE, Ms. Childers requests that Defendant Lifestyles answer and that on final trial, Ms. Childers have judgment against Defendants for compensatory, declaratory and equitable relief, and exemplary damages, attorneys' and expert fees, costs of suit, and interest as provided by law, and any further relief to which they may be entitled.

Respectfully submitted,

*/s/ Brian P. Sanford*
Brian P. Sanford
Texas Bar No. 17630700
bsanford@sanfordfirm.com
Elizbeth "BB" Sanford
Texas Bar No. 24100618
esanford@sanfordfirm.com

**THE SANFORD FIRM**
1910 Pacific Ave., Suite 15400
Dallas, TX 75201
Ph:  (214) 717-6653
Fax: (214) 919-0113

**ATTORNEYS FOR PLAINTIFF
MISHAWN CHILDERS**